UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:                                              Chapter 11
                                                    (Subchapter V)

THE NEW MOUNTAIN LAUREL RESORT & SPA, LLC,          Case No.: 22-40620-jmm

                            Debtor.
-----------------------------------------------------------------------X

# DECLARATION OF ANA OLSON
# PURSUANT TO E.D.N.Y. LBR 1007-4

In accordance with 28 U.S.C. § 1746, ANA OLSON declares under penalty of perjury that the following is true and correct:

1. I am the independent manager (the "Manager") of The New Mountain Laurel Resort & Spa, LLC, the debtor and debtor-in-possession (the "Debtor") in this Chapter 11 Subchapter V case. I have served as the Debtor's general manager since approximately June 2021. In that capacity, I am generally familiar with the Debtor's day-to-day operations, business, and financial affairs.

2. This declaration is made pursuant to E.D.N.Y. LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of this Chapter 11 case and in support of the Debtor's petition for relief under Chapter 11 Subchapter V of Title 11 of the United States Code.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations, financial affairs and past history. If called upon to testify, I would testify competently to the facts set forth in this declaration. I am authorized to submit this declaration on behalf of the Debtor. Section I of this

1

declaration provides an overview of the Debtor's business. Section II describes the circumstances giving rise to the Debtor's commencement of this Chapter 11 Subchapter V case. Section III describes certain information required by LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules.

## I.

## The Debtor's Business

4. The Debtor is a Delaware limited liability company with its corporate office located at 139-27 Queens Blvd., Jamaica, New York 11435.

5. The Debtor is a management company operating and managing the Mountain Laurel Resort (the "Resort"), which is a 145-guest room hotel, resort and spa, which includes 94 timeshare units, located in the Pocono Mountains. The Resort's address is 81 Treetop Drive, White Haven, Pennsylvania 18661. The real estate upon which the Resort is situated on is owned by Mountain Laurel Resort Holdings, LLC, an affiliate of the Debtor. The Debtor is a co-borrower on the mortgage granted by the Resort to Hanover Bank, with a current balance of approximately $4,561,800.00. That mortgage is current.

6. The Resort sits on approximately 138 acres and employs approximately 44 full and part-time employees.

7. Both the Debtor and the Resort are currently operational.

8. As the management company for the Resort, the Debtor, among other things, recruits, employs, supervises, directs, and discharges its employees; books group and transient business; arranges for and supervises the Resort's public relations and advertising; prepares the Resort's marketing plans; procures all inventory and replacement dinning ware, uniforms, and other supplies used in the Resort's public spaces and guest rooms; and plans, executes, and

supervises Resort repairs, and is instrumental in the purchases of Resort furniture, fixtures, appliances, computers, and other equipment.

9. In other words, the Debtor is given broad discretion in all matters relating to the management and operation of the Resort, including all employment decisions, account, marketing and promoting, and is otherwise responsible for the proper and efficient operations of the Resort.

10. As will be discussed in further detail below, the Debtor's bankruptcy filing was caused by, among other things: (i) a cash shortage due to the Resort being forced to close as a result of the COVID-19 pandemic; (ii) the Debtor falling behind on its utility payments; and (iii) the inability to renew its liquor license as a result of falling behind on the payment of state sales and hotel taxes.

## II.

## Events Leading to the Chapter 11 Case

**A.** **Shutdown Due to COVID-19**

11. The deterioration in the Debtor's financial condition was initially precipitated by the COVID-19 pandemic, which resulted in a sharp decline in tourism, the elimination of essentially all travel, significant reduction of timeshare maintenance payments and the cancellation of events and functions.

12. State and local ordinances enacted in Pennsylvania during the early days of the pandemic further restricted the Resort's ability to welcome guests and hold other hotel and resort functions that would have generated revenue for the Debtor.

13. As a result, between approximately March and July 2020, the Resort was forced to shut down and cease operations. During that time, the Resort lost hundreds of thousands of

dollars in revenue resulting in a severe cash shortage, which the Debtor has been unable to fully recover from. When the Debtor did finally resume operations in or around July 2020, its operations were limited and occupancy rates at the Resort remained low as fears of the COVID-19 virus still loomed. The Debtor received two (2) PPP loans which were used for the appropriate purposes and which have been forgiven. Both those loans were not enough to meet all of the cash needs of the Debtor.

**B.     Utilities**

14.     As a result of the cash deficit caused by the COVID-19 pandemic, the Debtor has fallen behind on its utility obligations.

15.     As of the bankruptcy filing date, and upon information and belief, the Debtor owes: Aqua Pennsylvania Wastewater approximately $185,330.65 on account of water/sewer services; (ii) Breezeline approximately $50,800.00 on account of cable services; (iii) PPL Electric Utilities approximately $125,711.45 on account of electric services; and UGI Utilities, Inc. approximately $52,717.80 on account of gas services.

16.     To make matters worse, the Debtor's cable provider – Breezeline – has already shutoff its cable services to the Debtor, which are critical to the Debtor's operation of the Resort. Without cable, which provides internet and cable tv amenities, guests are less likely to stay at the Resort as they would have no access to these amenities, which are fundamental to the hotel-resort industry.

**C.     Liquor License**

17.     In or around August 2021, the Debtor's liquor licensed expired. The Debtor attempted to renew its liquor license but was unable to as it owed sales taxes to the Pennsylvania Department of Revenue and hotel taxes to the County of Carbon. As of the bankruptcy filing

date, and upon information and belief, the Debtor owes state and hotel taxes to the Pennsylvania Department of Revenue and to the County of Carbon in the approximate amount of $242,088.15 and $86,075.36, respectively.

18. As a hotel-resort, a liquor license is absolutely vital to the Debtor's operations because it allows the Debtor to sell alcoholic beverages to guests for consumption on-site, which generates significant revenue for the Debtor. As such, the Debtor seeks to reorganize its debt with the Pennsylvania Department of Revenue and the County of Carbon so that it can renew its liquor license. Without a liquor license, the Debtor will not only lose out on alcohol sales, but will also likely see a decline in hotel-room sales as guests are more likely to patron a resort that does sell alcohol.

### III.

### Information Required by E.D.N.Y. LBR 1007-4

19. In accordance with E.D.N.Y. LBR 1007-4(a)(i), and to the best of my knowledge, information, and belief, the Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D) and qualifies under Subchapter V of the Bankruptcy Code

20. In accordance with E.D.N.Y. LBR 1007-4(a)(ii), and to the best of my knowledge, information, and belief, the Debtor is not a single asset real estate debtor within the meaning of Bankruptcy Code § 101(51B).

21. In accordance with E.D.N.Y. LBR 1007-4, a list of the names and addresses of the creditors holding secured claims and the 20 largest unsecured claims against the Debtor have been filed with the Debtor's bankruptcy petition[1].

---

[1] Official Form 204 filed with the Debtor's petition provides a list of the Debtor's creditors holding the 20 largest unsecured claims.

22. A summary of the Debtor's Assets and Liabilities are included with the Debtor's petition. *See* Official Form 206Sum "Summary of Assets and Liabilities for Non-Individuals."

23. As of the date of this declaration, the Debtor estimates its weekly payroll to employees (exclusive of officers, directors, stockholders, partners and members) for the 30-day period following the filing of the Chapter 11 Subchapter V petition to be approximately $75,084.44.

24. As of the date of this declaration, the Debtor estimates its operating income and expenses for the 30-day period following the bankruptcy petition date to be $220,000.00 and $200,000.00, respectively.

25. The Debtor does not make any admissions and reserves all of its rights and remedies.

26. The foregoing is true and current to the best of my knowledge, information and belief.

Dated: March 25, 2022  */s/ Ana Olson*
White Haven, Pennsylvania  Ana Olson
Independent Manager